## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**GASAWAY HOTSHOTS, LLC,**                                           **PLAINTIFFS**
**individually and on behalf of all others**
**similarly situated, and**
**LARRY JOE GASAWAY, individually**
**and on behalf of all others similarly**
**situated,**

**v.**                                   CIVIL ACTION NO: <u>3:21-cv-720-HTW</u>-LGI

**FINANCIAL CARRIER SERVICES,**
**INC., FINANCIAL CARRIER**
**SERVICES, LLC, TRANSPORTATION**
**FINANCIAL MANAGEMENT, LLC,**
**TRANSPORTATION FINANCE**
**MANAGEMENT, INC. all individually**
**and dba FINANCIAL CARRIER**
**SERVICES, CORPORATE DOE**
**DEFENDANT A-Z, AND DOE**
**INDIVIDUAL DEFENDNAT A-Z**

                                                         **DEFENDANTS**

## CLASS ACTION COMPLAINT

Plaintiffs Gasaway Hotshots, LLC and Larry Joe Gasaway ("Plaintiffs"), individually,

and on behalf of all others similarly situated, hereby files this Class Action Complaint against

Defendants Financial Carrier Services, Inc., Financial Carrier Services, LLC, Transportation

Finance Management, Inc., Transportation Financial Management, LLC, all named individually

and all dba Financial Carrier Services, Corporate Doe Defendants A-Z and Doe Individual

Defendants A-Z (collectively "Financial Carrier Services" or "Defendants"), and alleges as

follows:

## PARTIES

1.      Gasaway Hotshots, LLC is Mississippi Limited Liability Company that was
formed by and wholly owned by Larry Joe Gasaway on October 8, 2018, for the purpose of
operating as an interstate motor carrier.

2.      Larry Joe Gasaway is a Mississippi resident and citizen of the State of
Mississippi, who may be found at 699 Nation Hills, Apt. 1116, Tupelo, MS 38804.

3.      Upon information and belief, Financial Carrier Services, Inc. is a Florida
corporation with a mailing address of 1517 Ponce De Leon Dr., Fort Lauderdale, FL 33316. It
may be served by service on its Registered Agent Joseph Safina, located at 1517 Ponce De Leon
Dr., Fort Lauderdale, FL 33316. Defendant holds itself out as what is commonly referred to as a
factoring company that is in the business of purchasing accounts receivable from motor carriers
and others.

4.      Upon information and belief, Financial Carrier Services, LLC is a Florida Limited
Liability Company with a mailing address of 1517 Ponce De Leon Dr., Fort Lauderdale, FL
33316. It may be served by service on its Registered Agent Joseph Safina, located at 1517 Ponce
De Leon Dr., Fort Lauderdale, FL 33316. Upon information and belief the company is an LLC
and is owned by Derek Skea and/or Joseph Safina neither of whom are Mississippi citizens and
therefore is a citizen of either Florida or North Carolina.

5.      Financial Carrier Services, LLC also holds a Certificate of Authority as a foreign
limited liability company in the State of North Carolina. Financial Carrier Services, LLC has its
principal place of business in North Carolina and may be served in North Carolina by service on
its registered agent Nichele Marks, 13325 South Point Boulevard, Suite 300, Charlotte, NC

2

28273. Service may also be had at the same address on Derek Skea, its manager or other officers of the company.

6.      Transportation Financial Management, LLC is a Florida Limited Liability Company with a principal place of business at 576 Sandpiper Way, Boca Raton, FL 33431 and may be served by serving Derek Skea at the same address. Upon information and belief it is either the owner of Financial Carrier Services, an assignee, subsidiary or other related entity by which the parties commit the same or similar actions as stated herein against members of the putative Class and/or through which the Defendants intend to move or reallocate risks or assets while conducting the same or similar wrongful business practices and/or it operates under the common trade name Financial Carrier Services.

7.      Transportation Finance Management, Inc. is a Florida corporation with a principal place of business at 576 Sandpiper Way, Boca Raton, FL 33431 and may be served by serving Derek Skea at the same address. Upon information and belief it is either the owner of Financial Carrier Services, an assignee, subsidiary or other related entity by which the parties commit the same or similar actions as stated herein against members of the putative Class and/or through which the Defendants intend to move or reallocate risks or assets while conducting the same or similar wrongful business practices and/or it operates under the common trade name Financial Carrier Services.

8.      Upon information and belief, at some point after the year 2015 Financial Carrier Services, Inc. sold, assigned or transferred all rights in the factoring agreements to Financial Carrier Services, LLC and/or otherwise created Financial Carrier Services, LLC as a successor to Financial Carrier Services, Inc. and/or otherwise partnered with it. Further, upon information and belief Transportation Finance Management, Inc. and Transportation Financial Management, LLC

were created to also operate under the Financial Carrier Services dba name and/or separately in a manner to coordinate and spread the lending and other risks to various companies and/or to transfer assets fraudulently if one company were in jeopardy due to its actions. At all times the companies acted in concert with the other, had the same policies and procedures and otherwise are jointly and severally responsible for the actions alleged herein and/or each are independently responsible to the extent contracts were entered separately with putative plaintiffs. Allegations herein against "Financial Carrier Services" are made jointly against all named company defendants identified in this Class Action Complaint as well as any Doe Defendants once identified.

9.     Upon information and belief, Doe Corporations A-Z are related similar businesses owned as subsidiaries of one or both named Defendants herein or has common ownership and control as the Defendants herein the identity of which are presently unknown as well as the corporate location of such entities. These entities have related business practices or exist to spread or mitigate risk to Defendants but such entities operate under a common plan or scheme as that alleged herein. Plaintiffs will amend this Complaint once the true names, identities or capacities are such fictitiously named Defendants are ascertained.

10.     Upon information and belief, Doe Individual A-Z are individual officers or agents of the other Defendants who are not presently known to the Plaintiffs. Plaintiffs will amend this Complaint once the true names, identities or capacities of such fictitiously named Defendants are ascertained.

## JURISDICTION AND VENUE

11.     This court has jurisdiction over this action under the class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class in which: (1) at least some members of the proposed

Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

12.    Plaintiffs and the putative class have jurisdiction over the Defendants under Mississippi's long arm statute because one or more of the torts alleged herein, including but not limited to the filing of the wrongful UCC financing statement against Gasaway Hotshots, LLC occurred or accrued in Mississippi and because the alleged Factoring Agreement was signed in Mississippi and formed in Mississippi.

13.    This Court has personal jurisdiction over Defendants because the Defendants do substantial business in this District and the events and conduct at issue in this case giving rise to the claims alleged herein took place in Mississippi, and one or more took place in Hinds County, Mississippi.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District, specifically the filing of the wrongful financing statements with the Secretary of State.

15.    Financial Carrier Services, Inc. and/or Financial Carrier Services, LLC and/or the Doe entities A-Z do business as Financial Carrier Services. The Defendants operate a website that may be viewed in Mississippi at https://www.financialcarrierservices.com/ and this website is used to solicit motor carriers to finance and factor invoices with Defendants within the State of Mississippi. Upon information and belief Transportation Financial Management, LLC and Transportation Finance Management, Inc. also do business and/or obtain client via this same website under this common trade name of Financial Carrier Services.

16.     The website acts as the primary means to do business with Defendants from the taking of the application via the "Apply Online" option on the website, the ability to upload documents such as the factored or sold invoices via the "Upload Docs" option on the website, the ability of the Defendants' client to login to the website via the "Client Login" portion of the website, the "Contact Us" section of the website and other interoperability, all of which is available in Mississippi and used by members of the putative class in Mississippi.

17.     Upon information and belief, defendants send e-mails and otherwise solicit possible motor carriers and upon making contact either through direct solicitation in Mississippi or via the website making contract with the Mississippi resident, the contracts are then sent into Mississippi and signed in Mississippi via facsimile or e-mail.

18.     Plaintiffs executed the Factoring Agreement in Mississippi upon delivery to them via e-mail or facsimile in Mississippi, it was signed in Mississippi by Joey Gasaway, Amy Bing and JIT Hotshots, LLC in Mississippi and emailed to Financial Carrier Services from Mississippi.

19.     The invoices factored under the Factoring Agreement were delivered via e-mail from Mississippi to Financial Carrier Services. Money was then transferred to Plaintiffs' account in Mississippi.

20.     Defendants assert on its website that "FCS works with you. By offering flexible, contract-free factoring, we give you the control you need over your money; and ultimately, the future of your business." These statements are false, and the factoring is not contract-free. Statements such as this one were made in the State of Mississippi via its website and upon information and belief by salespeople via telephone to induce Mississippi residents to do business with Defendants.

21.     Further, Defendants have entered Mississippi to take advantage of its laws and protections and to file UCC-1 financing statements against debtors such as those in the position of Plaintiffs to preclude anyone else from doing business with the Plaintiffs and such improper financing statements or UCC-3 amendments or continuation statements are filed in the State of Mississippi at the direction and control of Defendants.

## FACTUAL ALLEGATIONS

22.     On or about June 19, 2014, Larry Joe Gasaway (" Joey Gasaway") along with Amy Catherine Bing and JIT Hotshots, LLC ("JIT Parties") entered into a Factoring Agreement with Financial Carrier Services, Inc. and/or one of the other Defendants after finding it on the internet or via advertisement in Mississippi. The contract was entered into in Mississippi.

23.     A true and correct copy of the Factoring Agreement sent to Mississippi for execution and entered by the JIT Parties in Mississippi is appended to this Complaint as Exhibit A. The Factoring Agreement was a contract solicited and entered in the State of Mississippi.

24.     As part of this Factoring Agreement, Financial Carrier Services took advantage of the benefits and laws of the State of Mississippi and filed with the Secretary of State a UCC-1 Financing Statement on June 18, 2014, naming as Debtors, Larry Joe Gasaway, Amy Bing, and JIT Hotshots, LLC and listing as Secured Party, Financial Carrier Services, 1451 West Cypress Creek Road, Ste. 300, Fort Lauderdale, FL 33309.

25.     After an unsuccessful partnership between Joey Gasaway and Amy Bing, JIT Hotshots, LLC went out of business and was administratively dissolved on or about December 8, 2015. JIT Hotshots, LLC did no further business after such dissolution nor did Amy Bing and Joey Gasaway operate any motor carrier operations as partners or in any other manner after such dissolution.

7

26.     Upon information and belief, Financial Carrier Services, Inc. purchased some invoices from JIT Hotshots, LLC and conducted other business under the Factoring Agreement while it was effective. Following the dissolution of JIT Hotshots, LLC any moneys owed or due under the Factoring Agreement were collected by Financial Carrier Services, Inc. and the account balance was zero.

27.     As of the time of the actions complained of herein, any claims Financial Carrier Services may have had arising under the Factoring Agreement against JIT Hotshots is barred by the applicable statute of limitations if any claims in fact existed.

28.     Neither Amy Bing, Joey Gasaway nor JIT Hotshots, LLC took any action to terminate the Factoring Agreement at the time of the dissolution. However, no further business was conducted under the Factoring Agreement nor has any factoring or other business been conducted under the Factoring Agreement since 2015. Therefore, the Factoring Agreement was non-executory after 2015.

29.     After 2015, by its acts or inactions Financial Carrier Services terminated the contract without notice or had the ability to do so once it went dormant.

30.     On or about October 8, 2018, Larry Joe Gasaway formed Gasaway Hotshots, LLC by filing a Certificate of Formation with the Mississippi Secretary of State. He was the sole owner.

31.     On or about November 13, 2018, Gasaway Hotshots, LLC received motor carrier authority from the Federal Motor Carrier Safety Administration ("FMCSA"). That authority was revoked on April 8, 2019, by the FMCSA. This information was and still is publicly available on the FMCSA website and was available to Financial Carrier Services at all times.

32.     Gasaway Hotshots, LLC was administratively dissolved on November 22, 2019, by the Secretary of State and later reinstated on August 13, 2021. Upon formation, and later upon reinstatement, Gasaway Hotshots, LLC had one Member and owner, Larry Joe Gasaway. This information was also publicly available to Defendants.

33.     On or about April 16, 2019, Financial Carrier Services again took advantage of the laws and benefits of the State of Mississippi and filed a UCC-3 Amendment updating its information and renewing its lien on JIT Hotshots, LLC by which it sought to protect itself under Mississippi laws and protections.

34.     On or about May 2, 2019, Financial Carrier Services again took advantage of the laws and benefits of the State of Mississippi and filed a UCC-3 Amendment updating its information and adding as a debtor Gasaway Hotshots, LLC.

35.     The account balance for JIT Hotshots, LLC and/or Larry Gasaway on May 2, 2019, had a balance of zero.

36.     On May 2, 2019, JIT Hotshots, LLC  and/or Larry Gasaway owed no obligation to Financial Carrier Services.

37.     Gasaway Hotshots, LLC was not a party to the Factoring Agreement.

38.     On May 2, 2019, Gasaway Hotshots, LLC did not have active motor carrier authority to operate as a motor carrier in interstate commerce. Financial Carrier Services failed to conduct due diligence as it knew or should have know this information.

39.     Gasaway Hotshots, LLC did not owe any debt or obligation to Financial Carrier Services at the time the UCC-3 was filed, nor did it ever operate under the Factoring Agreement or incur debt or other obligations to Financial Carrier Services.

40.     On or about August 20, 2021, Gasaway Hotshots, LLC reinstated its motor carrier authority with the FMCSA and now has active motor carrier authority under Docket Number MC-172443 to transport property in interstate commerce.

41.     On August 17, 2021, Gasaway Hotshots, LLC obtained BIPD/Primary insurance from Lancer Insurance Company under policy number CM00734215 in the amount of $1,000,000 with an effective date of August 16, 2021.

42.     Gasaway Hotshots, LLC paid its premium with the anticipation of operating its business immediately.

43.     In August of 2021, Gasaway Hotshots, LLC begin the process of obtaining financing for his business and for the first time learned that Financial Carrier Services had filed a UCC-3 listing Gasaway Hotshots, LLC as a debtor and had taken a security interest against it.

44.     Gasaway Hotshots, LLC inquired with Financial Carrier Services to identify its right to such lien, and it claimed that Gasaway Hotshots, LLC was obligated by the Factoring Agreement.

45.     The UCC-3 filed by Financial Carrier Services against Gasaway Hotshots, LLC was filed without any right or notice to do so.

46.     Gasaway Hotshots, LLC due to the actions of Financial Carrier Services has been unable to operate as a motor carrier with full financing behind it because it was unable to timely obtain the financing from other sources that will allow the full unfettered operation of its business.

47.     Gasaway Hotshots, LLC purchased in August 2021 two trucks and trailers that were unable to operate because of the actions of Financial Carrier Services.

48.     Gasaway Hotshots, LLC has lost and continues to lose revenue, profits, lost marketing capacity, loss of opportunities, loss of customers and suffered other damages at the hands of Financial Carrier Services and its coercive and unlawful practices.

49.     Gasaway Hotshots, LLC made an authenticated demand for a termination statement to be filed by Defendants. At the time the demand was made there was no obligation secured by the alleged collateral covered by the financing statement and no commitment to make an advance, incur an obligation or otherwise give value to Gasaway Hotshots, LLC nor did it authorize the filing of the financing statement.  Defendants failed to do so in twenty (20) days as required by Miss. Code §75-9-513(c) (West 2021).

50.     Financial Carrier Services actions amounted to coercion and were unethical and clearly designed to place a small one owner motor carrier in the position of having no choice but to do business with Financial Carrier Services or face financial ruin.

51.     The actions described herein taken by Defendants in regard to Larry Joe Gasaway are the common practices and procedures of all Defendants.  These actions described herein as to a non-party to the Factoring Agreement, Gasaway Hotshots, LLC is also indicative of the common practice and procedures of Defendants. These practices and actions have impacted other members of the putative Class and continue to impact the putative Class.

**CLASS ACTION CERTIFICATION**

52.     Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

53.     Plaintiffs bring this action on behalf of themselves, and all others similarly situated as a Class, defined below.

54.     Plaintiff seeks to represent a Class composed of and defined as follows:

    a.   All individuals or businesses against whom Defendants have filed a wrongful financing statement or wrongfully refused to provide a release letter.

    b.   All individuals or businesses that relied upon the misleading language found on the website and other advertising of Defendants indicating the arrangement for factoring is "contract-free" and who were coerced by the business practices of Defendants to force them to stay under the financial control of Defendants through refusal to timely cancel contracts, the imposition of undisclosed or unknow fees, or other actions intended to prevent, delay or in bad faith deny the Class Members the right to do business elsewhere upon meeting obligations to the Defendants under Factoring Agreements.

    c.   All individuals providing a personal guaranty or executing the Factoring Agreement individually whose subsequent businesses have been unjustly targeted by the business practices of Defendants and against whom overreaching financing statements, continuation statements, or amendments have been filed.

55.    Plaintiff reserves the right to expand, limit, modify or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

56.    *Numerosity:*  The Class is composed of thousands of motor carriers or owners of motor carriers (the "Class Members") whose joinder in this action would be impracticable.  The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

57.    *Commonality:* There is a commonality in questions of law and fact affecting the Class.  These questions of law and fact predominate over individual questions affecting individual Class Members, including but not limited to the following:

a.    Whether Defendants have a common policy and practice of searching state databases to identify related companies against which it can wrongfully file UCC-1 financing statements or UCC-3 Amendments adding non-parties;

b.    Whether Defendants have a common policy and practice of delaying or preventing the cancellation of Factoring Agreements as to parties who owe no obligation with the intent to compel or coerce the Class Members to remain with Defendants rather than change to a lower cost or better alternative;

c.    Whether the Defendants have violated the Uniform Commercial Code by the practice of wrongfully filing UCC financing statements, refusing to release the financing statements upon notice, all in violation of the Uniform Commercial Code;

d.    Whether Defendants used undisclosed fees to preclude the cancellation or termination of contracts.

e.    Whether Defendants intentionally interfered with the contracts of Class Plaintiffs;

f.    Whether Defendants negligently interfered with the contracts of Class Plaintiffs;

g.    Whether Defendants intentionally interfered in the business relations of the Class Plaintiffs;

h.    Whether Defendants breached the duty of good faith and fair dealing;

i.    Whether the Defendants wrongfully asserted 'reincarnated business' status on a regular basis against the Class Plaintiffs;

j. Whether Defendants wrongfully asserted the right to file against a 'reincarnated business' to compel business to them by coercion that they would not otherwise obtain;

k. Whether the Factoring Agreements apply to the Plaintiffs and Class Plaintiffs;

l. If the Defendants assert the Factoring Agreement applies, whether it is unconscionable in some or all respects;

m. Whether at the time Defendants filed the UCC financing statements did Plaintiff Class have an outstanding obligation;

n. Whether Defendants' conduct was in bad faith;

o. Whether the Plaintiff Class is entitled to punitive damages; and

p. Whether the Plaintiff and Class Members are entitled to an award of reasonable attorney fees, pre-judgment interest and costs of the suit.

58.    *Typicality:* Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Members have all been injured by Defendants' unfair and unlawful business practices of filing financing statements that are wrongful, refusing to timely cancel Factoring Agreements without charging hidden fees or delaying the cancelation by ignoring communications, and coercing Class Members to stay with Defendants rather than move their business to other providers. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member because of Defendants' actions are described herein.

59.    *Superiority:* In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair

14

and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent a class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the fruits of their misdeeds.

60.     *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interest of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interest of the other Class Members. Plaintiff has retained counsel with experience in litigating complex cases, including class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members.

61.     *Ascertainability:* Plaintiff is informed and believes that Defendants keep extensive computerized records of their operations through, inter alia, computerized application systems and systems designed to keep up with and track the amounts due and business conducted with the Class Members. Defendants have one or more databases through which all the Class Members may be identified and ascertained, and it maintains contact information, including email and mailing addresses. It further maintains extensive records on its UCC filings and other financing statements that will help identify Class Members. From this information, the existence of the Class Members can be determined, and thereafter, notice of this action can be disseminated in accordance with due processes requirements.

62.     *Predominance:* Common questions predominate over any questions affecting only individual members of the class.

15

63.     Class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class.

64.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members. A class action is superior to other methods to ensure a fair and efficient adjudication of this controversy because, in the context of similar litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There will be no difficulties in managing this action.

65.     In the alternative, class treatment is appropriate under Fed. R. Civ. P. 23(c)(4) because this is a case in which class adjudication of issues would serve the interests of judicial economy.

## COUNT I
## (VIOLATION OF UNIFORM COMMERCIAL CODE)

66.     Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

67.     The filing of the UCC-3 against Gasaway Hotshots, LLC in Mississippi was wrongful. Defendants had no right to make the filing against Gasaway Hotshots, LLC nor did it have a right to renew the filing against Larry Joe Gasaway personally.

68.     Defendants have violated Miss. Code § 75-9-625 (West 2021) by making the wrongful filing and as such Plaintiffs are entitled to damages in the "amount of loss caused by a failure to comply" with Mississippi law and such "loss may include loss resulting from the

debtor's inability to obtain, or increased cost of, alternative financing." Miss. Code § 75-9-625(b).

69.     Further Defendants are liable in the amount of $500 for each violation of Mississippi Law as provided in Miss. code Ann. § 75-9-625(e).

    a.  Defendants have failed to record or send a termination statement timely per Miss. Code § 75-9-513(c);

    b.  Defendants have failed to provide a release of Plaintiffs; and

    c.  Other violations to be shown at trial.

70.     Defendants actions were done in contravention of Mississippi law and as a result Plaintiffs are entitled to all damages available for such actions.

71.     Plaintiffs reserve the right to amend and make additional state law claims for all similar filings made against Plaintiffs and other members of the putative class in other states that were a violation of the Uniform Commercial Code and failing to terminate those filings and subject to additional or enhanced penalties, attorney fee provisions or other remedies.

## COUNT II
### (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

72.     Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

73.     The actions of the Defendants in interfering in the current and future business relationships of Plaintiffs and the putative Class, including those with other factoring companies were intentional and willful.

74.     Defendants' actions were calculated to cause damages to the Plaintiff and putative Class and their lawful businesses.

75.     Defendants' actions were for the unlawful purpose of causing such damage and loss, without right or justifiable cause on the part of the Defendants and such actions constitute malice.

76.     Actual damage and loss resulted to the Plaintiff and putative Class from the actions of the Defendants.

## COUNT III
### (INTENTIONAL INTERFERENCE WITH CONTRACT)

77.     Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

78.     The actions of the Defendants in interfering in the contracts of Plaintiff and putative Class were intentional and willful.

79.     The Contracts would have been performed, specifically the selected financing company would have provided financing to Gasaway Hotshots, LLC or other members of the Plaintiff and putative Class but for the interference by Defendants.

80.     Defendants knew of the existence of an agreement between Plaintiff and other financing sources and similar financing for the putative Class and deliberately committed a wrongful act without justification that was certain or substantially certain to result in the interference of the contracts and such intent is inferred from such knowledge.   During the time of the interference the Defendants were not acting in the exercise of a legitimate interest or right.

81.     Defendants' actions were calculated to cause damages to the Plaintiff Class and their lawful businesses.

82.     Defendants' actions were for the unlawful purpose of causing such damage and loss, without right or justifiable cause on the part of the Defendants and such actions constitute malice.

83.    Actual damage and loss resulted to the Plaintiff and putative Class from the actions of the Defendants.

84.    The Defendants actions were the proximate cause of the loss or damage suffered by the Plaintiff and putative Class.

## COUNT IV
## (NEGLIGENT INTERFERENCE WITH CONTRACT)

85.    Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

86.    The actions of the Defendants in interfering in the contracts of Plaintiff and putative Class were negligent.

87.    The Contracts would have been performed but for the interference by Defendants.

88.    Defendants' actions were calculated to cause damages to the Plaintiff and putative Class and their lawful businesses.

89.    Defendants' actions were for the unlawful purpose of causing such damage and loss, without right or justifiable cause on the part of the Defendants and such actions constitute malice.

90.    Actual damage and loss resulted to the Plaintiff and putative Class from the actions of the Defendants.

91.    The Defendants actions were the proximate cause of the loss or damage suffered by the Plaintiff and putative Class.

## COUNT V
## (RECISSION)

92.    Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

93.    To the extent Defendants attempt to assert application of the Factoring Agreement as controlling in this matter as to Joey Gasaway, Gasaway Hotshots, LLC or other Class Members then such contract should be rescinded by the Court as it terms, and conditions are unconscionable in their terms, conditions and obligations and unenforceable in Mississippi and North Carolina as well as other applicable jurisdictions.

94.    Because the terms and conditions of the Factoring Agreement are unconscionable and terms of adhesion they may not be applied by the Court to Plaintiffs or members of the putative Class.

## COUNT VI
## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

95.    Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

96.    Defendants actions in this matter violate the duty under Article 9 and common law to act in good faith and to observe reasonable commercial standards in the operation of the business.

97.    Further, in Mississippi all contracts carry with them a duty of good faith and fair dealing. A party is not permitted to engage in opportunistic advantage-taking, or lack of cooperation depriving the other contracting party of their reasonable expectations.

98.    Plaintiff, Joey Gasaway, and other members of the Plaintiff and putative Class signed Factoring Agreements with Defendants.  Others did not sign Factoring Agreements, but the contracts signed by a related party were being asserted against a party such as Gasaway Hotshots, LLC and other Plaintiff Class members that did not sign a contract with Defendants.

99.    Defendants have used coercion, intimidation, delay, obstruction, sleight of hand and other trickery to ignore, disrupt and coerce legitimate businesses such as those that make up

the Plaintiff and putative Class and through these actions have attempted to compel, extort, and restrict the Plaintiff and putative Class from finding other sources of financing, moving their business to others or freely operating by improperly asserting claims of right over the assets of the Plaintiff and putative Class and refusing to timely release the contracts if applicable, or asserting contract rights that are not present, and to file termination statements.

100.    Defendants' actions are not reasonable, nor can they be justified, and such acts breach the duty of good faith and fair dealing. This breach entitles to Plaintiffs' and the putative Class to damages.

101.    Further, such actions by Defendants constitutes a willful or wanton disregard for the Plaintiffs' and Class Members' rights and entitles them to an award of punitive damages, attorneys' fees and costs.

## COUNT VII
### (PUNITIVE DAMAGES AND ATTORNEY FEES)

102.    Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

103.    Defendants actions herein have been intentional or malicious, or have evidenced malice, or reckless disregard for the rights of others.

104.    As a result of the Defendants' actions, the Plaintiff and putative Class is entitled to punitive damages along with attorneys' fees, costs and expenses of bringing this action.

## COUNT VIII
### (TRO, PRELIMIARY INJUNCTION AND INJUNCTION)

105.    Plaintiffs incorporate as if fully set forth herein all preceding paragraphs, facts and allegations.

21

106.    Larry Gasaway and Gasaway Hotshots, LLC is still subject to a UCC-1 security agreement filing and UCC-3 Amendment of Parties naming Gasaway Hotshots, LLC on file with the Mississippi Secretary of State and Defendants have refused to provide a release, refused to cooperate in removing it, and refused to provide any basis for such refusal. Notwithstanding multiple requests to Defendants to release the Plaintiffs, the Defendants have failed and refused to terminate the filing and provide a release and this continuing refusal is preventing Gasaway Hotshots, LLC from obtaining full access to financing necessary to operate which is causing it current and ongoing damages.

107.    Joey Gasaway has provided a termination notice to Financial Carrier Services without waiver of his assertion such notice was not required as it relates to Gasaway Hotshots, LLC.  Plaintiffs assert that the Factoring Agreement did not apply to Gasaway Hotshots, LLC and was an unnecessary condition to obtain a release of the wrongfully filed lien. Defendants have continued to maintain the filing and refused to release Gasaway Hotshots, LCC but instead have continued to coerce Plaintiff in a manner consistent with pressuring it to contract again with Defendants rather than other sources of financing.

108.    The Factoring Agreement was terminated but Defendants still refuse to relent in their wrongful actions.

109.    Gasaway Hotshots, LLC has been and continues to be unable to fully operate its business because of Defendants' wrongful actions.

110.    Plaintiff Gasaway Hotshots, LLC seeks a preliminary injunction and later permanent injunction requiring the Defendants to release it and terminate the UCC-1 and UCC-3 on file with the Mississippi Secretary of State, order Defendants timely produce release letters and preclude the refiling of such documents in the future.

111.    Likewise, upon information and belief, members of the putative class are also demanding or have demanded release by Defendants, defendants have failed or refused to provide the releases and this continuing wrongful refusal is creating a continuing harm to the putative class as well.

112.    In addition to the relief sought by Plaintiff, the putative class seeks an injunction enjoining similar actions against the putative class and requiring the Defendants to release it and terminate UCC-1 and UCC-3 statements on file in the putative class members' State, order Defendants timely produce release letters, and preclude the refiling of such documents in the future.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, individually, and on behalf of the members of the putative class, prays for relief as follows:

a.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

b.  The appointment of Plaintiffs as class representatives and their counsel as class counsel;

c.  A declaration that the practices complained of herein are unlawful and violate the laws of Mississippi alleged herein;

d.  An injunction against Defendants from engaging in the unlawful practices complained of herein;

e.  An injunction order Defendants to release Gasaway Hotshots, LLC and Larry Gasaway from all filed liens and other claims;

f.  Awarding Plaintiff and Class Members their damages in an amount to be determined at trial, including compensatory damages, punitive damages, and any other damages available;

23

g.  An order awarding Plaintiff and the class attorneys' fees and costs;

h.  An order awarding Plaintiff and the members of the putative class pre-judgment and

post-judgment interest, as allowed by law; and

i.  Such further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury on all issues so triable.

Filed this day of November 2021.

Respectfully submitted,

**GASAWAY HOTSHOTS, LLC,
individually and on behalf of all others
similarly situated, and LARRY JOE
GASAWAY, individually and on behalf
of all others similarly situated,**

By their Attorneys,

DunbarMonroe, PLLC


*s/ Clark Monroe*
Clark Monroe

OF COUNSEL:

G. Clark Monroe II (MSB #9810)
    gcmonroe@dunbarmonroe.com
Christopher G. Dunnells (MSB# 105029)
    cdunnells@dunbarmonroe.com
Lauren T. Carpenter (MSB# 106275)
    lcarpenter@dunbarmonroe.com
*DunbarMonroe, PLLC*
270 Trace Colony Park Drive
Ridgeland, MS  39157
601-898-2073 Office
601-898-2074 Facsimile